# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBERT WINSTON, JR., ) | CASE NO. 5:11CV1834 |
| Petitioner, ) | |
| ) | JUDGE DONALD C. NUGENT |
| v. ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| TIM BRUNSMAN, Warden, ) | |
| ) | |
| Respondent. ) | REPORT AND RECOMMENDATION |

Petitioner, Robert Winston, Jr. ("Winston"), challenges the constitutionality of his conviction in the case of *State v. Winston*, Summit County Court of Common Pleas Case No. CR-2008-11-3852.  Winston, represented by counsel, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on August 30, 2011.  On October 24, 2011, Warden Tim Brunsman ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 8.)  Winston filed a Traverse on December 23, 2011.  (Doc. No. 10.)  For reasons set forth in detail below, it is recommended that Winston's Petition be denied.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Winston's conviction as follows:

> {¶ 2} Robert Winston and Shasta Kelly, the victim, were previously in a relationship and have one child together. In October of 2008, Winston moved out of Kelly's apartment, where he had been staying. On November 5, 2008, Kelly called the police to report that she believed that Winston had attempted to break into her apartment. On November 13, 2008, the police responded to Kelly's apartment two times. The first was based on Kelly's report that Winston had attempted to break into her apartment; the second was based upon a neighbor's call that Winston had been kicking the apartment door.
>
> {¶ 3} On the evening of November 20, 2008, Winston visited with his son at

Kelly's apartment. He left shortly thereafter. Later in the evening, he called Kelly to tell her he wanted to come back to the apartment to discuss their relationship. Kelly informed Winston that she did not want him to come over. In the early morning hours of November 21, 2008, despite Kelly's wishes, Winston arrived at the apartment. He first knocked on the door, and when Kelly denied him entrance, he began to kick on the door and threatened to break it down. Kelly initially placed a couch in front of the door, fearing he would break the door. Later she allowed him to enter the apartment. Winston, angry that Kelly had not immediately allowed him in, grabbed Kelly and slammed her head into a door. He then vomited in the kitchen sink. During this time, Kelly attempted to escape by running from the apartment. Winston caught her in the apartment complex parking lot and dragged her back to the apartment.

{¶ 4} Once back in the apartment, Winston started punching Kelly as she lay on the floor. He then got a knife and held it against her. The two walked to Kelly's bedroom where Winston set down the knife, and informed Kelly that he wanted to have anal sex. Kelly informed him that she did not want to have anal sex and offered to engage in oral sex instead. She proceeded to fellate Winston, who fondled her and then engaged in anal sex with Kelly. After the encounter, Winston went to the bathroom and Kelly went to the living room. Eventually, Winston fell asleep and Kelly called police.

{¶ 5} As a result of these incidents, Winston was indicted on one count of kidnapping, in violation of R.C. 2905.01; three counts of rape, in violation of R.C 2907.02(A)(2); one count of aggravated burglary, in violation of R.C. 2911.11(A)(1) and/or (2); one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1); two counts of domestic violence, in violation of R.C. 2919.25(A) and (C); one count of endangering children, in violation of R.C. 2929.22(A); and one count of menacing by stalking, in violation of R.C. 2903.211(A)(1). Winston pled not guilty to the charges.

{¶ 6} Prior to trial, the State notified the court of its intent to use other acts evidence and expert testimony regarding battered woman syndrome. The trial court held a hearing on the State's notice of intent to use other acts evidence and expert testimony and deemed the evidence admissible.

{¶ 7} At the close of trial, the jury found Winston not guilty on the rape count involving vaginal sex and not guilty on the count of endangering children. The jury found Winston guilty of the remaining two rape charges, with relation to anal sex and oral sex, the aggravated burglary charge, the kidnapping charge, the gross sexual imposition charge, and two counts of domestic violence. The jury determined that Winston was not a sexually violent predator. Winston was sentenced to a total of 16 years of incarceration. Winston has timely appealed and has raised five assignments of error for our review.

*State v. Winston*, 2010 WL 1227704, *1-2, 2010-Ohio-1354, ¶¶ 2-7 (Ohio App. 9th Dist. Mar. 31, 2010).

## II. Procedural History

### A.  Conviction

On December 4, 2008, a Summit County Grand Jury charged Winston as follows:

2

(1)      one count of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01(A)(2)/(A)(3) and/or (A)(4), together with a sexually violent predator specification;

(2)      three counts of rape in violation of O.R.C. § 2907.02(A)(2), together with sexually violent predator specifications;

(3)      one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1) and/or (A)(2);

(4)      one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1);

(5)      one count of domestic violence in violation of O.R.C. § 2919.25(A);

(6)      one count of domestic violence in violation of O.R.C. § 2919.25(C);

(7)      one count of endangering children in violation of O.R.C. § 2919.22(A); and,

(8)      one count of menacing by stalking in violation of O.R.C. § 2903.211(A)(1).

(Doc. No. 8-3, Exh. 2.) On March 11, 2009, a jury found Winston guilty of two counts of rape, two counts of domestic violence, and one count of kidnapping, aggravated burglary, gross sexual imposition, and menacing by stalking. (Doc. No. 8-4, Exh. 3.) He was found not guilty on one count of rape and child endangering. *Id.* On April 21, 2009, the trial court sentenced Winston to an aggregate term of 16 years incarceration. (Doc. No. 8-6, Exh. 5.)

**B.    Direct Appeal**

On May 18, 2009, Winston, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court"), raising five assignments of error:

1.      The trial court erred by permitting irrelevant evidence to be presented by the state and by not complying with Ohio Evidence Rule 403, which deprived Appellant of due process and his rights to a fair trial.

2.      The evidence is insufficient to sustain a finding of guilt for kidnapping; two counts of rape; aggravated burglary; gross sexual imposition; menacing by stalking, and domestic violence.

3.      The verdict of guilty of kidnapping, rape, aggravated burglary, gross sexual imposition, menacing by stalking and domestic violence was against the manifest weight of the evidence.

4.      The trial court abused its discretion in sentencing appellant to a total of sixteen years in prison.

5.      The trial court erred by not considering rape and gross sexual

3

imposition allied offenses and convicting appellant of both.

(Doc. No. 8-10, Exh. 9 at 5.)  On March 31, 2010, Winston's conviction was affirmed.  (Doc. No. 8-12, Exh. 11.)

On April 30, 2010, Winston, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio repeating the five assignments of error as propositions of law.  (Doc. Nos. 8-14, 8-15, Exhs. 13, 14.)  On June 23, 2010, the appeal was dismissed as not involving any substantial constitutional question.[1]

### C.     Application to Reopen Appeal

On June 24, 2010, Winston, through new counsel, filed an application to reopen the direct appeal pursuant to Ohio App. R. 26(B) presenting three issues relating to ineffective assistance of appellate counsel:

> 1. The trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding Mr. Winston's proper request to proceed pro se, in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.  (Tr. 848-55).
>
> 2. The trial court committed plain error when it sentenced Mr. Winston to multiple sentences for allied offenses of similar import committed with a single animus regarding his multiple convictions for domestic violence, in violation of R.C. 2941.25, and in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.
>
> 3. Mr. Winston was provided ineffective assistance of trial counsel when trial counsel failed to object to the trial court's sentencing of Mr. Winston on multiple counts of domestic violence, when the alleged offenses were allied offenses of similar import committed with a single animus, in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. No. 8-17, Exh. 16.)  On July 30, 2010, the state appellate court denied the application.

---

[1] The record reflects an Ohio Supreme Court entry in the case of *Lawrence Harris v. State of Ohio*, Case No. 2010-0764.  Nonetheless, Winston's entry is documented at 125 Ohio St.3d 1465, 928 N.E.2d 739 (2010).

(Doc. No. 8-19, Exh. 18.)

On September 8, 2010, Winston filed a timely Notice of Appeal raising two issues:

1. While Ohio courts can consider the timeliness of an unequivocal request by a criminally accused individual to proceed pro se at trial, there is no per se rule that such a request, if made near to or during the time of trial, may be summarily denied for want of timeliness. A trial court injects structural error into an accused's trial when it summarily denies the accused's unequivocal request to proceed pro se merely because the request was made near to or during the time of trial, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

2. A defendant is deprived of the effective assistance of appellate counsel when appellate counsel fails to raise reversible errors on direct appeal.

(Doc. Nos. 8-21, 8-22, Exhs. 20, 21.) On October 27, 2010, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 8-23, Exh. 22.)

**D.     Federal Habeas Petition**

On August 30, 2011, Winston filed a Petition for Writ of Habeas Corpus, asserting the following grounds for relief:

**GROUND ONE**: Mr. Winston's appellate counsel rendered ineffective assistance of counsel, in violation of Mr. Winston's right under the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed to raise on Mr. Winston's behalf an assignment of error arguing that the trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding Mr. Winston's proper request to proceed pro se.

**GROUND TWO**: The trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding his proper request to proceed pro se, in violation of Mr. Winston's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. No. 1.)

### III. Exhaustion and Procedural Default

**A.     Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to

5

rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B. Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

6

second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See*

7

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

Respondent contends that both grounds are procedurally defaulted as they were not presented on direct appeal and the doctrine of *res judicata* bars their litigation in subsequent state proceedings. (Doc. No. 8 at 13.) The Warden further contends that this Court should presume that the state appellate court denied Winston's 26(B) application based upon its application of *res judicata*. The Respondent asserts that Winston has not shown cause and prejudice in order to overcome the default. *Id* at 14.

Winston avers that he properly raised both grounds in his timely application to reopen under 26(B) with the state appellate court, and as such, no default occurred. (Doc. No. 10 at 5-8.) Alternatively, even if the second ground is defaulted, Winston contends that he can establish cause and prejudice based upon the ineffective assistance of his appellate counsel. *Id*. at 7-8.

A 26(B) application for reopening is limited to claims of ineffective assistance of appellate counsel. Ohio App.R. 26(B)(1); *see State v. Goines*, 659 N.E.2d 787, 74 Ohio St.3d 409, 410 (1996); *Kolvek v. Eberlin*, 2007 WL 6197483, *11 (N.D. Ohio May 24, 2007). It is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal. *Stojetz v. Ishee*, 389 F.Supp.2d 858, 907 (S.D. Ohio 2005).

8

The state appellate court, applying Ohio and federal constitutional law, found that appellate counsel was not ineffective for failing to raise the issue of self-representation. (Doc. No. 8-19.) In assessing the ineffective assistance claim, the court also reached the underlying issue of self-representation, finding no error. *Id*. The Ohio Supreme Court dismissed Winston's subsequent appeal as not involving any substantial constitutional question. (Doc. No. 8-23.) Winston's first ground for relief is, therefore, exhausted.

This Court declines to address whether Winston's second ground for relief is defaulted as addressing the first ground will involve considering the second. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an

9

explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, –– U.S. ––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does

10

not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

To prove ineffective assistance of appellate counsel, the claimant must show a level of deficient performance that is prejudicial to the defendant under *Strickland v. Washington,* 466 U.S. 668 (1984).[3] *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993). Counsel must provide reasonable professional judgment in presenting the appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751–52,

---

[3] To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel. *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. at 750–54; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Sixth Circuit has identified the following factors to be considered in determining whether counsel on direct appeal performed competently:

    A. Were the omitted issues "significant and obvious?"

    B. Was there arguably contrary authority on the omitted issues?

    C. Were the omitted issues clearly stronger than those presented?

    D. Were the omitted issues objected to at trial?

    E. Were the trial court's rulings subject to deference on appeal?

    F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

    G. What was appellate counsel's level of experience and expertise?

    H. Did the petitioner and appellate counsel meet and go over possible issues?

    I. Is there evidence that counsel reviewed all the facts?

    J. Were the omitted issues dealt with in other assignments of error?

    K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999). This list is not exhaustive and need not produce a certain "score." *Id.* at 428. Lastly, failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

### V. Analysis

The Sixth and Fourteenth Amendments guarantee criminal defendants the right to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 833-34 (1975); *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). In addition, "a criminal defendant in federal court has a right to represent himself or herself at sentencing." *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007). An unconstitutional denial of the right of self-representation is a structural error for which the remedy is a new trial.[4] *Jones v. Jamrog*, 414 F.3d 585, 594 (6th Cir. 2005). The scope of the right of self-representation is a legal question that is reviewed *de novo*. *Jones*, 489 F.3d at 247. "The exact contours of the right to self-representation, however, depend on the nature of the proceeding." *Jones*, 489 F.3d at 248.

To trigger the right of self-representation, two conditions must be satisfied. First, the accused must "knowingly and intelligently" waive the right to counsel after having been apprised of "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Second, a defendant's request for self-representation must be made clearly and unequivocally. *Raulerson v. Wainwright*, 469 U.S. 966, 969–70, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984); *United States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1995). The right to self-representation is "waived if it is not timely and unequivocally asserted." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). The right to self-representation also may be waived through conduct that indicates that the defendant is vacillating on the issue or has abandoned his request altogether. *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000). Therefore, although a defendant has the right to represent himself in criminal proceedings, "the right to self-representation is not absolute." *Martinez v. Court of App. of Cal.*, 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

In *Faretta*, the Supreme Court found voluntary and intelligent waiver where "weeks before trial, [the defendant] clearly and unequivocally declared to the trial court that he wanted to

---

[4]"Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984). *McKaskle* is instructive on the right to standby counsel.

13

represent himself and did not want counsel." [*Faretta*,] 422 U.S. at 835, 95 S.C.t at 2541.  The record affirmatively showed that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will."  *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986).  Further, the defendant in *Faretta* had "a genuine inclination to conduct his own defense, and demonstrated an ability to do so."  *Id*.

"Even where the right to self-representation is clearly invoked, it must be done . . . in a timely manner, and courts will balance any such assertion against considerations of judicial delay."  *Heard v. Sherry*, 2011 WL 2710702, *6 (E.D. Mich. Jul. 13, 2011) (*quoting U.S. v. Martin*, 25 F.3d 293, 295-96 (6th Cir. 1994)).  In *Robards*, 789 F.2d at 383, the Sixth Circuit ruled that the state trial court did not err in denying the habeas petitioner's motion to represent himself when the motion was not made until the first day of trial and after the clerk had called the roll of jurors.  *Id*.  The *Robards* Court concluded that the petitioner's request for self-representation, if honored by the trial court, "would have impermissibly delayed the commencement of the trial."  *Id*. at 384.  Although a self-representation request is typically timely if made prior to the selection and swearing of the jury, the Sixth Circuit held that such a request is not timely "when the prosecution makes an affirmative showing that the defendant's request for self-representation is merely a tactic to secure a delay in the proceeding."  *Robards*, 789 F.2d at 383.

Winston claims that he was denied his constitutional right to represent himself and that his appellate counsel was ineffective in not raising this claim on direct appeal.  Counsel did not raise the issue of self-representation in Winston's direct appeal.  Winston, however, did raise it as part of his 26(B) application to reopen, which the court addressed as follows:

> First, [Winston] contends that counsel should have argued that the trial court violated the Appellant's constitutional rights to self-representation.  He points out that during trial, after the state rested its case, he requested to dismiss his trial counsel and represent himself.  However, "'[t]he constitutional right of self-representation is waived if it is not timely and unequivocally asserted.'" *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 38, *quoting Jackson v. Ylst* (C.A.9, 1990), 921 F.2d 882, 888.  The Ohio Supreme Court has found a similar request untimely when made three days prior to the start of trial.  *Cassano, supra*, at ¶40.  Thus Appellant's request, made at the close of the State's case, was untimely.  Appellant's counsel on appeal was not ineffective for declining to raise this issue.

14

(Doc. No. 8-19 at 2.)

At trial, the following colloquy took place regarding Winston's request for self-representation:

> THE COURT: * * * This would be our fourth day of trial on *State v. Winston*. The State rested its case. The Court admitted State's exhibits yesterday.
>
> Mr. Winston informed me that he was going to give up his right to remain silent and Mr. Yoder indicated he would be putting his client on the stand.
>
> And so are we now ready to call the jury in this fourth day of trial?
>
> MR. YODER: Your Honor, I would like to put on the record just one matter before the jury is brought in.
>
> My client has reiterated today, also I believe on Wednesday, that he would feel more comfortable and he believes that it's necessary for his case that new counsel be appointed to handle this matter, and I'd ask the Court to inquire.
>
> THE COURT: Well, Mr. Winston, did you say that to your attorney?
>
> THE DEFENDANT: Yes, I did, Your Honor.
>
> THE COURT: I think you and I had a discussion early on about the fact that court-appointed counsel, you do not get to choose which attorney would represent you. Do you recall that discussion?
>
> THE DEFENDANT: Yes, I do, Your Honor. But I never disputed whether or not I had a choice.
>
> You wrongly assumed the reason why I wanted a new attorney is because of some assumption that I was upset with the deal put on the table by the prosecutors when I never asked for any deal of any kind.
>
> THE COURT: I'm not understanding. Mr. Yoder, help me.
>
> MR. YODER: There was a conversation on the record that we had a couple weeks ago that you indicated to Mr. Winston when he requested new counsel, that perhaps the reason why he was requesting new counsel is because he was unhappy with the offer that I relayed to him that the prosecutor had given us.
>
> THE COURT: That's only one aspect of it. I mean, there's more to it than that. I think that's only one issue.
>
> At any rate, no matter what the reason, what I said is the same. And, certainly, it can't – change of counsel can't happen in the middle of trial.
>
> THE DEFENDANT: Well, I would like to relieve him of his duties and represent myself.
>
> THE COURT: Well, certainly, that's not advisable, either, because if I understand the request, is your client asking to proceed representing himself?

15

MR. YODER: Pro se, Your Honor. He'd like to continue the trial on his own.

THE COURT: Well, the Court does not approve such a request because of the fact that you're not aware of the rules of procedure, rules of evidence, and the way trials are required to proceed. One can't simply say anything one wants in trial.

Mr. Yoder might have liked to have pursued certain avenues, but he knows the rules of procedure, he knows that some things can be said, others can't. You don't have that specialized knowledge and training. And so this Court is not inclined to grant that request.

THE DEFENDANT: With all due respect, Your Honor, it sound[s] like you [are] assuming that the reason why –

THE COURT: You need to first of all stand when you're addressing the Court and come up here to the microphone and talk to me.

THE DEFENDANT: Okay. Yes, Your Honor.

It seems like you're making the assumption again that the reason why I wanted new counsel or to represent myself is because my lawyer didn't ask questions that I may have wanted him to ask, and it might have been against the rules of the Court.

That never was – that never was the reason at all. Like I had said before when I spoke to you before we had the trial proceedings, I want to exercise my rights with a new attorney.

I want to have the choice to my attorney, I just wanted new representation, and I had a good reason for making that point to you. And it had nothing to do with any offer offered by the prosecution, because I –

THE COURT: I understand that. We've been over that. And I've said to you, you don't have a choice on that.

And I also am not going to allow you to change the representation status during trial.

I want Mr. Yoder to continue the case to conclusion. So let's go.

MR. YODER: Your Honor, I would just say this, and I don't want to be difficult to the Court, but due to the fact that I am * * * appointed counsel on this case. As counsel of record I have to abide by what my client wishes and instructs me to do.

I would just bring to the Court's attention that it is his constitutional right to have this trial and to represent himself if he so chooses.

The Court would be required to determine whether he's competent, whether he has the knowledge and the ability to go forward *pro se*.

I would request an in camera interview with Mr. Winston for the Court to make that determination.

THE COURT: Well, I think that's not so much the issue. We've started down the road with counsel, and this Court is not going to change course at this juncture.

If I were to allow this and you were to take the stand today, just for one example, you

16

would have to ask yourself the question and answer it. I mean, how can you do that?

I'm not going to simplify rules. You're still required to follow the rules. The better course is to continue with Mr. Yoder.

THE DEFENDANT: With all due respect, Your Honor, the officers that the prosecutors brought up as witnesses yesterday committed perjury, and I'm aware of that, and I have proof that they committed perjury.

THE COURT: Well, you'll get to tell your side. I think you're anticipating things unnecessarily. This part of the trial now is your turn.

So Mr. Yoder will put you on the stand and you'll tell your side of the story.

And I think then, in the trial, the jury's function is to determine who's telling the truth and who's not. So you're going to get your chance to come on the stand.

You've told me you want to do that, and certainly you can, and we'll give you the time you need to tell your story. So let's proceed.

MR. YODER: Thank you, Your Honor.

(Doc. No. 8-31 at 5-12.)

In the instant case, the 26(B) reviewing court did not unreasonably apply federal principles when it determined that Winston's Sixth Amendment right to represent himself was not abridged. First, Winston did not invoke his right to self-representation until the fourth day of trial, at the end of the State's case.[5] Further, Winston did not exhibit a "genuine inclination to conduct his own defense." The record reflects that Winston equivocated – he first requested new counsel, and when that was denied, he asked to represent himself.

Winston, relying on *Moore v. Haviland*, 531 F.3d 393 (6th Cir. 2008) contends that a request for self-representation can be timely even if made during trial. In *Moore*, the Sixth Circuit acknowledged that a trial court should consider the timing and the defendant's reasons for requesting self-representation. *Id*. at 402-403. The *Moore* Court affirmed the granting of habeas relief based upon the trial court's denial of self-representation. *Moore*, however, is distinguishable. In *Moore*, the defendant, upon becoming dissatisfied with counsel's representation during trial, promptly requested to represent himself, and upon the court's request,

---

[5]The record reflects that the issue of appointment of new counsel was raised two days earlier. (Doc. No. 8-31 at 5.) It does not reflect, however, the reasons Winston was displeased, or that he believed his attorney was incompetent.

17

submitted a letter that outlined his competence and trial strategy. *Id*. at 402. Here, the record reflects that Winston was not certain, but equivocal. He first sought new counsel, without indicating any specific dissatisfaction, and when that request was denied, Winston asked to represent himself. More importantly, *Moore* does not reflect clearly established law as set forth in *Faretta*. *See Parker*, – S.Ct. –, 567 U.S. –, 2012 WL 2076341, *6 (Jun. 11, 2012); *Howes*, – S.Ct. –, 2012 WL 508160 (Jun. 11, 2012) (Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court.")

The state appellate court's decision was neither contrary to nor an unreasonable application of either *Strickland* or *Faretta*. This Court finds no merit in either of Winston's grounds for relief.

## VI. Conclusion

For the foregoing reasons, it is recommended that Winston's Petition be denied.

s/ Greg White
United States Magistrate Judge

Date:  June 26, 2012

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**