IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT WINSTON, JR., ) | CASE NO. 5:11 CV 1834 |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| TIM BRUNSMAN, WARDEN, ) | Magistrate Judge Greg White |
| ) | |
| Respondent. ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Greg White. (Docket #11.) On August 30, 2011, Petitioner, Robert Winston, Jr., filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket #1.) On October 24, 2011, Respondent filed his Answer/Return of Writ. (Docket #8.) The Magistrate Judge recommends that the Petition be denied.

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); see also House v. Bell, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Winston's conviction as follows:

{¶ 2} Robert Winston and Shasta Kelly, the victim, were previously in a relationship and have one child together. In October of 2008, Winston moved out of Kelly's apartment, where he had been staying. On November 5, 2008, Kelly called the police to report that she believed that Winston had attempted to break into her apartment. On November 13, 2008, the police responded to Kelly's apartment two times. The first was based on Kelly's report that Winston had attempted to break into her apartment; the second was based upon a neighbor's call that Winston had been kicking the apartment door.

{¶ 3} On the evening of November 20, 2008, Winston visited with his son at Kelly's apartment. He left shortly thereafter. Later in the evening, he called Kelly to tell her he wanted to come back to the apartment to discuss their relationship. Kelly informed Winston that she did not want him to come over. In the early morning hours of November 21, 2008, despite Kelly's wishes, Winston arrived at the apartment. He first knocked on the door, and when Kelly denied him entrance, he began to kick on the door and threatened to break it down. Kelly initially placed a couch in front of the door, fearing he would break the door. Later she allowed him to enter the apartment. Winston, angry that Kelly had not immediately allowed him in, grabbed Kelly and slammed her head into a door. He then vomited in the kitchen sink. During this time, Kelly attempted to escape by running from the apartment. Winston caught her in the apartment complex parking lot and dragged her back to the apartment.

{¶ 4} Once back in the apartment, Winston started punching Kelly as she lay on the floor. He then got a knife and held it against her. The two walked to Kelly's bedroom where Winston set down the knife, and informed Kelly that he wanted to have anal sex. Kelly informed him that she did not want to have anal sex and offered to engage in oral sex instead. She proceeded to fellate Winston, who fondled her and then engaged in anal sex with Kelly. After the encounter, Winston went to the bathroom and Kelly went to the living room. Eventually, Winston fell asleep and Kelly called police.

{¶ 5} As a result of these incidents, Winston was indicted on one count of kidnapping, in violation of R.C. 2905.01; three counts of rape, in violation of R.C. 2907.02(A)(2); one count of aggravated burglary, in violation of R.C. 2911.11(A)(1) and/or (2); one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1); two counts of domestic violence, in violation of R.C. 2919.25(A) and (C); one count of endangering children, in violation of R.C. 2929.22(A); and one count of menacing by stalking, in violation of R.C. 2903.211(A)(1). Winston pled not guilty to the charges.

{¶ 6} Prior to trial, the State notified the court of its intent to use other acts evidence and expert testimony regarding battered woman syndrome. The trial

court held a hearing on the State's notice of intent to use other acts evidence and expert testimony and deemed the evidence admissible.

{¶ 7} At the close of trial, the jury found Winston not guilty on the rape count involving vaginal sex and not guilty on the count of endangering children. The jury found Winston guilty of the remaining two rape charges, with relation to anal sex and oral sex, the aggravated burglary charge, the kidnapping charge, the gross sexual imposition charge, and two counts of domestic violence. The jury determined that Winston was not a sexually violent predator. Winston was sentenced to a total of 16 years of incarceration. Winston has timely appealed and has raised five assignments of error for our review.

State v. Winston, 2010 WL 1227704, *1-2, 2010-Ohio-1354, ¶¶ 2-7 (Ohio App. 9th Dist. Mar. 31, 2010).

II. Procedural History

A.  Conviction

On December 4, 2008, a Summit County Grand Jury charged Winston as follows:

(1) one count of kidnapping in violation of Ohio Revised Code ("O.R.C.") § 2905.01(A)(2)/(A)(3) and/or (A)(4), together with a sexually violent predator specification;
(2) three counts of rape in violation of O.R.C. § 2907.02(A)(2), together with sexually violent predator specifications;
(3) one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1) and/or (A)(2);
(4) one count of gross sexual imposition in violation of O.R.C. § 2907.05(A)(1);
(5) one count of domestic violence in violation of O.R.C. § 2919.25(A);
(6) one count of domestic violence in violation of O.R.C. § 2919.25(C);
(7) one count of endangering children in violation of O.R.C. § 2919.22(A); and,
(8) one count of menacing by stalking in violation of O.R.C. § 2903.211(A)(1).

(Doc. No. 8-3, Exh. 2.) On March 11, 2009, a jury found Winston guilty of two counts of rape, two counts of domestic violence, and one count of kidnapping, aggravated burglary, gross sexual imposition, and menacing by stalking. (Doc.

-3-

No. 8-4, Exh. 3.) He was found not guilty on one count of rape and child endangering. Id. On April 21, 2009, the trial court sentenced Winston to an aggregate term of 16 years incarceration. (Doc. No. 8-6, Exh. 5.)

B.  Direct Appeal

On May 18, 2009, Winston, through counsel, filed a Notice of Appeal with the Court of Appeals for the Ninth Appellate District ("state appellate court"), raising five assignments of error:

1. The trial court erred by permitting irrelevant evidence to be presented by the state and by not complying with Ohio Evidence Rule 403, which deprived Appellant of due process and his rights to a fair trial.

2. The evidence is insufficient to sustain a finding of guilt for kidnapping; two counts of rape; aggravated burglary; gross sexual imposition; menacing by stalking, and domestic violence.

3. The verdict of guilty of kidnapping, rape, aggravated burglary, gross sexual imposition, menacing by stalking and domestic violence was against the manifest weight of the evidence.

4. The trial court abused its discretion in sentencing appellant to a total of sixteen years in prison.

5. The trial court erred by not considering rape and gross sexual imposition allied offenses and convicting appellant of both.

(Doc. No. 8-10, Exh. 9 at 5.) On March 31, 2010, Winston's conviction was affirmed. (Doc. No. 8-12, Exh. 11.)

On April 30, 2010, Winston, pro se, filed a Notice of Appeal with the Supreme Court of Ohio repeating the five assignments of error as propositions of law. (Doc. Nos. 8-14, 8-15, Exhs. 13, 14.) On June 23, 2010, the appeal was dismissed as not involving any substantial constitutional question.

C.  Application to Reopen Appeal

On June 24, 2010, Winston, through new counsel, filed an application to reopen the direct appeal pursuant to Ohio App. R. 26(B) presenting three issues relating to ineffective assistance
of appellate counsel:

-4-

1. The trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding Mr. Winston's proper request to proceed pro se, in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution. (Tr. 848-55).

2. The trial court committed plain error when it sentenced Mr. Winston to multiple sentences for allied offenses of similar import committed with a single animus regarding his multiple convictions for domestic violence, in violation of R.C. 2941.25, and in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

3. Mr. Winston was provided ineffective assistance of trial counsel when trial counsel failed to object to the trial court's sentencing of Mr. Winston on multiple counts of domestic violence, when the alleged offenses were allied offenses of similar import committed with a single animus, in violation of Mr. Winston's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. No. 8-17, Exh. 16.) On July 30, 2010, the state appellate court denied the application. (Doc. No. 8-19, Exh. 18.)

On September 8, 2010, Winston filed a timely Notice of Appeal raising two issues:

1. While Ohio courts can consider the timeliness of an unequivocal request by a criminally accused individual to proceed pro se at trial, there is no per se rule that such a request, if made near to or during the time of trial, may be summarily denied for want of timeliness. A trial court injects structural error into an accused's trial when it summarily denies the accused's unequivocal request to proceed pro se merely because the request was made near to or during the time of trial, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

>    2. A defendant is deprived of the effective assistance of appellate counsel when appellate counsel fails to raise reversible errors on direct appeal.

(Doc. Nos. 8-21, 8-22, Exhs. 20, 21.) On October 27, 2010, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 8-23, Exh. 22.)

### D. Federal Habeas Petition

On August 30, 2011, Winston filed a Petition for Writ of Habeas Corpus, asserting the following grounds for relief:

> GROUND ONE: Mr. Winston's appellate counsel rendered ineffective assistance of counsel, in violation of Mr. Winston's right under the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed to raise on Mr. Winston's behalf an assignment of error arguing that the trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding Mr. Winston's proper request to proceed pro se.
>
> GROUND TWO: The trial court injected structural error into Mr. Winston's trial when it summarily denied Mr. Winston's proper request to proceed pro se, and failed to hold a hearing regarding his proper request to proceed pro se, in violation of Mr. Winston's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. No. 1.)

On October 24, 2011, Respondent filed his Answer/Return of Writ. (Docket #8.) On June 26, 2012, the Magistrate Judge issued his Report and Recommendation, recommending that the Petition be denied. (Docket #11.) Petitioner filed his Objections to the Magistrate Judge's Report and Recommendation on July 9, 2012. (Docket #12.)

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo.

-6-

FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

## Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo*, considering the Objections of Petitioner. The Court does not find the objections raised by Petitioner to be persuasive. The Magistrate Judge thoroughly reviewed the factual and procedural history of this case and, providing a detailed analysis of applicable law, correctly determined that the Appellate Court's decision was neither contrary to nor an unreasonable application of law. *Strickland v. Washington*, 466 U.S. 668 (1984); *Faretta v. California*, 422 U.S. 806, 833-34 (1975). There is no merit in either of Petitioner's Grounds for Relief.

This Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own. The Court ADOPTS the Report and Recommendation of the Magistrate Judge (Docket #11) in its entirety. The Petition for Writ of Habeas Corpus (Docket #1) is DENIED.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484. For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that this Court's assessment of Petitioner's Constitutional claims is debatable or wrong. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: October 16, 2012